## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

JAN STEVENSON,             )
                             )
          Plaintiff,    )
                             )
v.                      )       **Case No. CIV-21-182-JFH-SPS**
                             )
KILOLO KIJAKAZI,[1]    )
**Acting Commissioner of the Social**  )
**Security Administration,**    )
                             )
         Defendant.  )

## REPORT AND RECOMMENDATION

The claimant Jan Stevenson requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the undersigned Magistrate Judge hereby RECOMMENDS that the Commissioner's decision be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security

---

[1] On July 9, 2021, Kilolo Kijakazi became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Kijakazi is substituted for Andrew M. Saul as the Defendant in this action.

Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]"  *Id*. § 423 (d)(2)(A).  Social security regulations implement a five-step sequential process to evaluate a disability claim.  *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied.  *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997).  Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).  The Court may not reweigh the evidence or substitute its discretion for the

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities.  If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied.  If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1.  If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry.  Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work.  At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC.  Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work.  *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). *See also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was forty-one years old at the time of the administrative hearing (Tr. 43). She earned a bachelor's degree in sociology, and has no past relevant work (Tr. 31, 43, 248). The claimant alleges that she has been unable to work since November 1, 2018, due to a traumatic brain injury, bipolar disorder, seizures, arthritis, depression, sleep problems, hormone deficiencies, short term memory loss, walking problems, and anger management issues (Tr. 247).

### Procedural History

On November 1, 2018, the claimant applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her application was denied. ALJ Kevin T. Alexander conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated August 5, 2020 (Tr. 22-32). The Appeals Council denied review, so the ALJ's opinion is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform light work as defined

-3-

in 20 C.F.R. § 416.967(b), except that she could only occasionally climb ramps/stairs, balance, stoop, kneel, crouch, or crawl, and never climb ladders/ropes/scaffolds, be exposed to hazards, drive, or operate dangerous machinery. Additionally, he found she was capable of simple, routine, repetitive tasks, with supervision that is simple, direct, and concrete, and a reasoning level not to exceed three, and that she was to have no interaction with the general public (Tr. 26). The ALJ then concluded that although she had no past relevant work to return to, she was nevertheless not disabled because there was other work in the economy that she could perform, *i. e.*, housekeeping and assembler (Tr. 31-32).

## Review

The claimant contends that the ALJ erred by failing to properly evaluate the evidence in the record. Specifically, she contends that the ALJ relied on evidence prior to her application/onset date in determining her RFC, improperly evaluated a physician opinion, failed to account for her use of a cane, and failed to properly assess the consistency of statements from a third party. None of these contentions have merit, and the decision of the Commissioner should therefore be affirmed.

The ALJ found that the claimant had the severe impairments of bipolar disorder, depressive disorder, seizure disorder, obesity, and generalized anxiety disorder (Tr. 24). The relevant medical evidence reflects that she has a history of a traumatic brain injury at age 15 from a car accident in the 1990s (Tr. 347). On November 30, 2012, the claimant had a seizure and began medication management for her seizure disorder (Tr. 568). The claimant presented to Mercy Hospital in Fort Smith, Arkansas on July 12, 2018, with her roommate, Mr. Ken Randolph, and he reported that the claimant was having short-term

memory loss, and issues with aphasia, anger issues, and depression (Tr. 374). Upon exam, she was noted to be walking with a cane, and to have slow, halting speech with pauses (Tr. 375). The response was to take a conservative approach with a medication adjustment (Tr. 375). The claimant fell on September 13, 2018, and had a laceration to the back of her head but was not bleeding (Tr. 444). At a follow-up with her primary care doctor, the claimant had normal musculoskeletal and neurological findings (Tr. 399-401). In June 2019, the claimant presented to the emergency room after reporting a fall during which she hit her right hand on glass, causing a laceration (Tr. 518). The laceration was treated with a pressure dressing and antibiotic ointment (Tr. 519).

The claimant presented in October 2018 for management of her bipolar disorder and was noted to have slow speech and mild to moderate depression symptoms (Tr. 404-408). By December 2018 (one month after the application/alleged onset date), the claimant was noted to have normal speech, but she had high stress and a treatment note stated: "lack of social interaction 5 or more times a week," and she still had mild to moderate depression symptoms (Tr. 410-415). However, a November 6, 2019 treatment note states that the claimant saw or spoke to people that she cared about or was close to five or more times per week (Tr. 532).

Back in June 2016, Dr. Larry Vaught, Ph.D., completed a mental status examination and mental Medical Source Statement ("MSS") as to the claimant (Tr. 353-359). He noted in the mental status examination that she had a mildly flattened affect, slow speech with mild slurring, and that she walked slowly with a cane in her left hand (Tr. 359). He noted that concentration, persistence, and pace was a relative weakness, and that she had motor

slowing (Tr. 359). He assessed her with bipolar disorder, NOS, as well as cognitive disorder, NOS (mild) (Tr. 359). In the MSS, he indicated that the claimant had moderate limitations in the ability to understand and remember complex instructions, carry out complex instructions, and in interacting with the public, supervisors, co-workers, and responding to work situations (Tr. 353-354). In support, he noted she had chronic instability and depression, and that she also had impaired motor speed (Tr. 354).

On July 7, 2017, Dr. Chris Sudduth, M.D., conducted a physical examination of the claimant (Tr. 361-368). The claimant had normal range of motion, grip strength, and sensation; however, he noted that tandem gait was not achieved, and that she presented with a cane but was able to walk normally without it (Tr. 361-364, 366-368). He specifically stated that the cane did not appear medically necessary, and that the claimant could squat with ease, heel/toe walk, and stand/balance on one foot, but that she could not hop on either foot bilaterally (Tr. 368).

On February 15, 2019, Dr. Gabriel Ranas completed a range of joint motion evaluation chart, in which he indicated that the claimant had normal range of motion, although he did note that she had weak heel/toe walking (Tr. 421).

On June 8, 2020, Dr. Steve Belinga, M.D., completed a neurological evaluation of the claimant. The claimant reported memory loss, and he ordered a brain MRI and EEG, noting that a memory test was "a little abnormal, but not enough to consider dementia" (Tr. 727-728). Upon a physical exam, he noted that the claimant had no wide-based gait, but could walk on heels/toes, tandem walk, and had normal arm swing though she was a little slow (Tr. 728). The EEG was normal (Tr. 730). At a follow-up appointment on June 29,

2020, he noted that the brain MRI showed an old meningioma and evidence of left temporal encephalomalacia (Tr. 732, 735). In the assessment, Dr. Belinga noted the claimant's history of traumatic brain injury and epilepsy, but that her seizures were well controlled (Tr. 732). He further noted that the claimant's ambulation seemed affected by lightheadedness or dizziness (but not quite vertigo), and that he would consider physical therapy first, prior to an MRI of her lumbar spine (Tr. 732). He assessed her with unspecified abnormalities of gait and mobility, as well as noting her epilepsy. The treatment plan included continuation of seizure medication, and physical/occupational therapy in a pool, and he indicated he would see her in three months (Tr. 732).

As to her physical impairments, state reviewing physicians found initially and upon reconsideration that the claimant could perform light work but they further limited her to only occasionally climbing ladders/ropes/scaffolds and avoiding concentrated exposure to hazards, both due to her history of seizures (Tr. 117-120, 136-139). As to her mental impairments, state reviewing physicians found the claimant could perform simple and some complex tasks and relate to others on a superficial work basis, and that she can adapt to a work situation (Tr. 122, 140).

At the administrative hearing, the claimant testified that she did not have good short-term memory and is being treated for bipolar and seizure disorders (Tr. 45). Her seizure medication was effective, and she testified that her last seizure was in 2012 (Tr. 46). She testified that she lived with a roommate, was able to tend to her own personal hygiene, and would help with chores when given a list (Tr. 47-48). Additionally, she testified that she would run errands and (prior to the pandemic) was involved with groups that met at the

library (Tr. 48-49). The claimant's roommate, Mr. Randolph, also testified at the hearing, stating that he had known the claimant since 2007 and that they had been roommates since 2012 (Tr. 50-51). He testified that the claimant had trouble remembering tasks and staying on task, and that the claimant would need constant supervision in order to perform a job (Tr. 53-54). He stated that she can go to the store but needs a specific list and still takes a long time to do so and she gets lost easily (Tr. 54-55). Additionally, he testified that she is unsteady on her feet and is concerned about slipping and falling when showering in their bathtub (Tr. 56). The claimant and Mr. Randolph each filled out function reports reflecting similar statements (Tr. 266-282). Additionally, Mr. Randolph stated that the claimant makes impulsive purchases, is prone to bouts of explosive temper, has a problem with authority, and cannot follow directions unless constantly reminded (Tr. 270-273).

In his written decision at step four, the ALJ summarized the claimant's hearing testimony and Mr. Randolph's testimony, as well as much of the medical evidence in the record (Tr. 27-31). He specifically noted the reports from Dr. Vaught, Dr. Sudduth, and Dr. Ranas (Tr. 27-28). As to the opinion evidence, the ALJ found Dr. Vaught's assessment that she could perform unskilled work persuasive because it was based on an interview with the claimant and cognitive testing, and it was consistent with the medical records (Tr. 27). He found Dr. Sudduth's opinion that she could perform light work to be persuasive because it was based on a physical examination of the claimant and consistent with the medical records (Tr. 28). He likewise found Dr. Ranas's opinion persuasive for the same reasons (Tr. 28). As to the claimant's treatment with Dr. Belinga, the ALJ summarized the record, noting the normal EEG and stating that the MRI "showed an old meningioma

encephalomalacia in the left temporal lobe" (Tr. 29). He then found the claimant's statements as to her impairments inconsistent with the medical evidence, noting that her seizures had been completely under control since 2012, but that he had still allowed for seizure precautions in the RFC (Tr. 29). He further stated that he had considered her obesity in formulating the RFC and that even though it was not at listing-level severity he had provided postural limitations (Tr. 29-30). As to her mental impairments, the ALJ found they were not as severe as she alleged, that she did well as long as she took her medication, that her daily activities are not severely restricted, and that there is not a significant deficit in her ability to function, nor did the record show significant levels of deficiencies in concentration, persistence, and pace, or in the ability to adapt/manage herself (Tr. 30). He then referenced Dr. Vaught's cognitive testing to find her capable of unskilled work, including simple, routine, repetitive tasks, with supervision that is simple, direct, and concrete, and reasoning levels not to exceed three, as well as no interaction with the general public (Tr. 30). Finally, the ALJ noted that the state reviewing physician opinions were partially persuasive and based on reviews of the medical records up to the time of their reports (January 2019-July 2019), but he stated that he had further limited the claimant based on later evidence in the record, including the claimant's hearing testimony (Tr. 30). He ultimately determined the claimant was not disabled (Tr. 31-32).

The undersigned Magistrate Judge first addresses the claimant's assertion, made as part of her other allegations of error, that the ALJ failed to properly evaluate the testimony of and Third Party Function Report submitted by Mr. Randolph. The claimant contends that the ALJ improperly credited *and* discredited his opinion when he used Mr. Randolph's

statements to find moderate and mild limitations for the claimant at steps two and three, but then failed to make specific findings as to the consistency of his statements at step four. First, the Tenth Circuit has clearly stated that an "ALJ's finding of a moderate limitation in concentration, persistence, or pace at step three does not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment." *Vigil v. Colvin*, 805 F.3d 1199, 1203 (10th Cir. 2015).   Additionally, "[w]hile an ALJ will consider the statements of a non-medical source in relation to a claimant's statements and the remaining evidence [] 'an ALJ is not required to make specific, written findings regarding each third-party or lay opinion when the decision reflects that the ALJ considered the opinion.'" *K.K. v. Kijakazi*, 2022 WL 819540, at *4 (D. Colo. Mar. 18, 2022) (*quoting James M.M. v. Saul*, 20-4006-JWL, 2020 WL 6680386, at *4 (D. Kan. Nov. 12, 2020) (*citing Blea v. Barnhart*, 466 F.3d 903, 914-15 (10th Cir. 2006), and *Adams v. Chater*, 93 F.3d 712, 715 (10th Cir. 1996)).   An ALJ is therefore not required to discuss how he considered statements from nonmedical sources in the same way as is required for medical opinions, *see* 20 C.F.R. §§ 404.1520c(d); 416.920c(d), although "the evidence is still *considered* in every case." *Andrea D. W. v. Kjakazi*, 2022 WL 1192780, at *5 (N.D. Okla. Feb. 9, 2022) (slip op.). Here, the ALJ repeatedly referenced and assessed Mr. Randolph's testimony and report (Tr. 25-31), and it was largely cumulative and duplicative of statements provided by the claimant in this case, which testimony the ALJ properly found inconsistent with the medical evidence in the record.   Therefore, the undersigned Magistrate Judge agrees with the Commissioner that any debatable failure to specifically evaluate Mr. Randolph's testimony and report is harmless error in light of its largely duplicative nature.  *See Best-*

*Willie v. Colvin*, 514 Fed. Appx. 728, 736 (10th Cir. 2013) ("[A]lthough the ALJ's decision does not expressly address this lay witness evidence, any error in failing to do so is harmless because 'the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims.'") (*quoting Buckner v. Astrue,* 646 F.3d 549, 560 (8th Cir.2011)). *See also Brescia v. Astrue*, 287 Fed. Appx. 626, 630 (10th Cir. 2008) ("While the ALJ did not explicitly discuss the statements of Ms. Brescia's sister and friend, we do not believe this omission is grounds for remand given the nature of their evidence, which was largely cumulative of Ms. Brescia's testimony and written statements.").

Next, the claimant argues that the ALJ erred at steps two and three by relying on evidence prior to the alleged onset date to support only mild to moderate findings in evaluating the "four broad functional areas" as to her mental impairments. The procedure for evaluating mental impairments at steps two and three is set out in 20 C.F.R. § 416.920a. Once an ALJ had identified a medically determinable mental impairment, the ALJ must rate the degree of functional limitation(s) in four broad functional areas ("[u]nderstand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself") using a five-point scale ranging from none to extreme. 20 C.F.R. § 404.1520a(c)(3)-(4). These four broad functional areas are referred to as the "Paragraph B criteria" because Paragraph B of almost every listing related to mental impairments provides the functional criteria for evaluating how a mental disorder limits a claimant's functioning. 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00(A)(2)(b). "To satisfy the Paragraph B criteria [in order to meet a Listing at step three], your mental disorder must

result in "extreme" limitation of one, or "marked" limitation of two, of the four areas of mental functioning." 20 C.F.R. § Pt. 404, Subpt. P, App. 1. Conversely, if all four areas are rated as "none" or "mild," an impairment is generally considered nonsevere. 20 C.F.R. § 404.1520a(d)(1). Regardless of whether a mental impairment is rated severe or nonsevere, the assessment of the "paragraph B" criteria are not substitutes for the ALJ's later RFC assessment. *See* SSR 96-8p, 1996 WL 374184, at *4 ("[T]he limitations identified in the 'paragraph B' and 'paragraph C' criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process."). And any error in evaluating the "paragraph B" criteria is harmless when the ALJ proceeds to consider *all* of the claimant's impairments—both severe and nonsevere—singly and in combination, when formulating the claimant's RFC. *See Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("Once the ALJ finds that the claimant has *any* severe impairment, he has satisfied the analysis for purposes of step two. His failure to find that additional alleged impairments are also severe is not in itself cause for reversal. . . . [T]he ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [citations omitted].

Here, the ALJ found that the claimant had a mild limitation in the ability to adapt or manage oneself, and moderate limitations in understanding, remembering, or applying information; interacting with others; and concentration, persistence, and pace (Tr. 25). The claimant, in addition to her arguments at Mr. Randolph's statements which have been dispensed with above, contends that the treatment records with the notation "lack of social

-12-

interaction 5 or more times per week" is found repeatedly after the alleged onset date and that there are records from Dr. Belinga supporting a decline in her cognitive function. She does not, however, acknowledge that those same records regarding lack of social interaction classified her impairments as mild to moderate, nor does she recognize the November 2019 record indicating that she *does* interact with loved ones five or more times per week, which is accurate as the record reflects the claimant has lived with Mr. Randolph since 2012 and interacts with him daily. And despite claimant's contentions to the contrary, the ALJ *did consider* these impairments throughout the evaluation.

The claimant further appears to assert that the assigned RFC is unsupported by substantial evidence because he failed to consider her need for a cane and to account for her worsening memory, which she contends was documented by Dr. Belinga. An RFC has been defined as "what an individual can still do despite his or her limitations." Soc. Sec. R. 98-6p, 1996 WL 374184, at *2 (July 2, 1996). It is "an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." *Id.* This includes a discussion of the "nature and extent of" a claimant's physical limitations including "sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching)." 20 C.F.R. §§ 404.1545(b), 416.945(b). Further, this assessment requires the ALJ to make findings on "an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis[,]" and

to "describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record."  Soc. Sec. R. 98-6p, 1996 WL 374184, at *1, 7.

The undersigned Magistrate Judge finds here that substantial evidence supports the ALJ's determination that the claimant can perform a limited range of light work.  The ALJ specifically discussed the claimant's use of a cane *and* the records discussing her gait and obesity.  The longitudinal evidence in the record (both prior to and after the alleged onset date) does not reflect further limitations, and the ALJ clearly considered *all* the evidence in the record because he noted her testimony, treatment notes, Dr. Sudduth's assessment prior to the onset date and weak heel/toe walking in 2019.  *Hill v. Astrue*, 289 Fed. Appx. 289, 293 (10th Cir. 2008) ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'") (*quoting Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004)).  *See also* Soc. Sec. Rul. 19-2p, 2019 WL 2374244, at *4 (May 20, 2019) ("We will not make general assumptions about the severity or functional effects of obesity combined with another impairment(s). Obesity in combination with another impairment(s) *may or may not* increase the severity or functional limitations of the other impairment.") (emphasis added).  Furthermore, the claimant has pointed to no *medical documentation* further limiting how long the claimant can walk or even prescribing a cane; rather, she asserts that her reports of further limitation required the ALJ to incorporate them.  But the claimant has pointed to no evidence other

than her own assertions, and the Court therefore declines to find an error here. *Cf. Garcia v. Astrue*, 2012 WL 4754919, at *8 (W.D. Okla. Aug. 29, 2012) ("Plaintiff's mere suggestion that a 'slow' gait might adversely affect his ability to perform the standing and walking requirements of light work is not supported by any authority.").

The claimant additionally asserts that the ALJ's evaluation of Dr. Belinga's treatment record was deficient because the ALJ did not properly evaluate his opinion. For claims filed on or after March 27, 2017, medical opinions are evaluated pursuant to 20 C.F.R. §§ 404.1520c(a), 416.920c. Under these rules, the ALJ does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[.]" 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ evaluates the persuasiveness of all medical opinions and prior administrative medical findings by considering a list of factors. *See* 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The factors are: (i) supportability, (ii) consistency, (iii) relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship), (iv) specialization, and (v) other factors that tend to support or contradict a medical opinion or prior administrative finding (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."). 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Supportability and consistency are the most important factors and the ALJ must explain how both factors were considered. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Generally, the ALJ is not required to explain how the other factors were considered. *Id.* However, when the ALJ finds that two or more

medical opinions or prior administrative findings on the same issue are equally well-supported and consistent with the record but are not exactly the same, the ALJ must explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered.  20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

Here, Dr. Belinga did not offer a medical opinion; rather, he reported the objective MRI and EEG test results and essentially stated that he was unsure of the root cause of any ambulation problems (Tr. 732).  Furthermore, the ALJ thoroughly summarized his report (Tr. 29).  And while the claimant takes issue with the fact that Dr. Belinga stated the claimant had "old meningioma, and evidence of L temporal encephalomalacia" (Tr. 732), while the ALJ stated that the "MRI showed an old meningioma encephalomalacia in the left temporal lobe" (Tr. 29), this does not represent a translation to a functional limitation in any way and the ALJ further *incorporated* the evidence in the report to limit the claimant to, *inter alia*, simple, routine, and repetitive tasks (Tr. 26, 29-30).  Thus, the ALJ's opinion was sufficiently clear for the Court to evaluate it.  The undersigned Magistrate Judge therefore finds that the ALJ set out the appropriate analysis and cited evidence supporting his reasons, *i. e.*, he gave clear and specific reasons that were specifically linked to the evidence in the record.  Accordingly, the ALJ's determination here is entitled to deference and the Court finds no error in analyzing *any* of the opinions in the record.  *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) ("The ALJ provided good reasons in his decision for the weight he gave to the treating sources' opinions.  Nothing more was required in this case.") (citation omitted).

-16-

The ALJ specifically noted every medical record available in this case, gave reasons for his RFC determination, and ultimately found that the claimant was not disabled.  *See Hill*, 289 Fed. Appx. at 293 ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding.  We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'") (*quoting Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004)).  This was "well within the province of the ALJ." *Corber v. Massanari*, 20 Fed. Appx. 816, 822 (10th Cir. 2001) ("The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ.") (*citing* 20 C.F.R. §§ 404.1527(e)(2); 404.1546; 404.1545; 416.946).  Accordingly, the decision of the Commissioner should be affirmed.

### Conclusion

As set forth above, the undersigned Magistrate Judge PROPOSES that correct legal standards were applied by the ALJ and the decision of the Commissioner is therefore supported by substantial evidence.  Accordingly, the undersigned RECOMMENDS that the decision of the Commissioner be AFFIRMED.  Any objections to this Report and Recommendation must be filed within fourteen days.  *See* Fed. R. Civ. P. 72(b).

**DATED** this 1st day of August, 2022.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**